UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER O.,[1]

Plaintiff,

-v-

FRANK J. BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

CIVIL ACTION NO.: 25 Civ. 2719 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.[3]

## I. INTRODUCTION

Plaintiff Peter O. ("Plaintiff") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g). (Dkt. No. 1 (the "Complaint")).[4] Plaintiff seeks review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") under the Act. (Id.) Plaintiff contends that the decision of Administrative Law Judge ("ALJ") Vincent M. Cascio ("ALJ Cascio") dated June 18, 2024 (the "ALJ Decision") was erroneous, not

[1] We identify Plaintiff by first name and last initial in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. See Joselyn M. v. Comm'r of Soc. Sec., No. 24 Civ. 8756 (GRJ), 2025 WL 3059761, at *1 n.1 (S.D.N.Y. Nov. 2, 2025).
[2] In May 2025, Frank J. Bisignano became the Commissioner of Social Security. See https://www.ssa.gov/agency/commissioner/ (last visited August 25, 2026).
[3] The parties consented to Magistrate Judge jurisdiction for all purposes. (Dkt. No. 6).
[4] We presume that Plaintiff's reference in the Complaint that this action is "pursuant to Section 295(g) of the [Act], as amended, 42 U.S.C. Section 405(g)[,]" (Dkt. No. 1 ¶ 1), is a typographical error and that Plaintiff meant to refer to Section 205(g).

supported by substantial evidence, and contrary to law, and asks the Court to remand for a new hearing to reconsider the evidence. (Id.) (See Dkt. No. 11).

Pursuant to the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) (the "Supplemental Rules") and the Court's Standing Order No. 22-mc-329-LTS (the "Standing Order"), the parties each submitted briefs setting forth the requested relief. (Dkt. Nos. 11 ("Plaintiff's Brief"); 16 (the "Commissioner's Brief")).[5] For the reasons set forth below, the ALJ Decision is **AFFIRMED** and this action is **DISMISSED**. Final judgment shall be entered in favor of the Commissioner.

## II. BACKGROUND

### A. Administrative Proceedings

In April 2010, Plaintiff, who was born in 1967, has a high school and some college education, and formerly worked as a police officer, applied for benefits, alleging a disability onset date of June 11, 2009. (R. 12,[6] 23, 66, 99, 104, 116, 127, 130, 158, 165, 237–41 (the "April 2010 Application") 731).[7] He claimed disability due to a neck injury and a herniated disc in his lower back, both of which appear to partially relate back to injuries he sustained in a car accident while on duty in 1995, carpal tunnel syndrome in both hands, and anxiety. (R. 240; see R. 446, 488, 739).

[5] Plaintiff's Brief was incorrectly styled as a motion to remand or for judgment on the pleadings, which is inconsistent with the Supplemental Rules and Standing Order mentioned above.

[6] Citations to "R." refer to the Certified Administrative Record. (Dkt. No. 9 (the "Record")).

[7] Plaintiff was previously approved for benefits for a closed period of disability from May 31, 2007 through June 10, 2009. (R. 105–17, 241). While Plaintiff's April 2010 Application asserts a "continuing disability from June 10, 2009[,]" (R. 241), the Complaint, Plaintiff's Brief, and the ALJ Decision all reference Plaintiff's alleged new disability onset date of June 11, 2009. (Dkt. Nos. 1 ¶ 4; 11 at 2; R. 12–15, 18, 24). We use the June 11, 2009 onset date, but in any case, this one-day discrepancy does not alter our analysis.

**1. Proceedings Before ALJs**

On October 28, 2010, Plaintiff's April 2010 Application was denied initially, (R. 104, 180–83), and he then requested a hearing before an ALJ. (See R. 192–93). In a decision dated April 24, 2012, ALJ Roberto Lebron found that Plaintiff was not disabled and therefore was not entitled to benefits. (R. 124–31). The Appeals Council remanded Plaintiff's April 2010 Application to obtain further evidence and conduct additional analysis. (See R. 136, 151).

In a decision dated May 20, 2014, ALJ Michael A. Rodriguez found that Plaintiff was not disabled and therefore was not entitled to benefits. (R. 133–46). Plaintiff requested review and the Appeals Council remanded Plaintiff's April 2010 Application for a second time. (See R. 151).

On January 14, 2019, Plaintiff, represented by counsel, appeared for a hearing (the "First Hearing") before ALJ John J. Barry ("ALJ Barry") (R. 59–103). In a decision dated March 13, 2020, ALJ Barry found that Plaintiff was not disabled and therefore was not entitled to benefits. (R. 148–68). On May 4, 2022, the Appeals Council remanded Plaintiff's April 2010 Application because the record on which ALJ Barry based his decision was not available and could not be reconstructed. (R. 169–74).

On May 30, 2024, Plaintiff, represented by counsel, appeared for and testified at a second hearing (the "Second Hearing"), this time before ALJ Cascio. (R. 30–58). ALJ Cascio also received testimony from a vocational expert, Joseph Atkinson (the "VE"), whom Plaintiff's attorney also questioned. (R. 48–56; see R. 12, 30, 32, 219, 315–16). After the Second Hearing, Plaintiff's counsel submitted additional medical records, which ALJ Cascio agreed to accept and consider. (R. 12).

**2. The ALJ Decision**

On June 18, 2024, ALJ Cascio issued the ALJ Decision denying Plaintiff's April 2010 Application for benefits. (R. 9–29). ALJ Cascio first found that Plaintiff had not engaged in substantial gainful activity since June 11, 2009 (the "Onset Date")[8] through September 30, 2014, the date he was last insured (the "Insured Date"). (R. 14). At step two, ALJ Cascio found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine status post fusion surgery; bilateral carpal tunnel syndrome status post repair and release surgeries; degenerative disc disease of the lumbar spine with disc herniation and obesity." (R. 14–15). ALJ Cascio also noted that Plaintiff alleged that he had an anxiety disorder. (R. 15).[9]

At step three, ALJ Cascio found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (R. 17). Specifically, ALJ Cascio found that Plaintiff's back condition did not meet the requirements of Listing 1.04, his hand condition did not meet the requirements of Listing 1.02 or any of the Listings under 11.00, and that there was no evidence that any functional limitations resulting from obesity increased the severity of a coexisting or related impairment to the extent that the combination of impairments medically equaled a Listing. (R. 17).

Before considering step four, ALJ Cascio then determined that, from the Onset Date through the Insured Date, Plaintiff had the residual functional capacity to:

---

[8] (See n.7, supra).

[9] To the extent Plaintiff alleges that he suffers from other chronic health conditions such as tachycardia, gastroesophageal reflux disease, hypertension, and Meniere's disease, ALJ Cascio found that these conditions did not constitute severe medically determinable impairments. (R. 15).

> perform light work as defined in 20 CFR [§] 404.1567(b) except occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; occasionally crouch and stoop; never kneel or crawl; avoid unprotected heights and hazardous machinery; frequently handle, finger, and reach with the bilateral upper extremities; and frequently rotate and flex the neck.

(R. 17 (the "RFC")). At step four, ALJ Cascio found, based in part on the VE's testimony, that Plaintiff was unable to perform any past relevant work as a police sergeant and detective through the Insured Date. (R. 22–23).

At step five, after considering Plaintiff's age (47 on the Insured Date, making him a younger individual, see 20 C.F.R. § 404.1563), education, work experience, and RFC, ALJ Cascio found that jobs existed in sufficient numbers in the national economy that he could have performed. (R. 23). Those jobs included: (i) cashier II (Dictionary of Occupational Titles ("DOT") code 211.462-010), an unskilled position requiring light exertion, of which there are 465,967 jobs in the national economy; (ii) mail clerk (DOT code 209.687-026), an unskilled position requiring light exertion, of which there are 11,300 jobs in the national economy; and (iii) router (DOT code 222.687-022), an unskilled position requiring light exertion, of which there are 123,124 jobs in the national economy. (R. 23–24).

Accordingly, ALJ Cascio found that Plaintiff had not been under a disability as defined in the Act from the Onset Date through the Insured Date. (R. 24). After the Appeals Council declined to review the ALJ Decision, the ALJ Decision became the final decision of the Commissioner. (R. 1–6).

**B. Procedural History**

On April 1, 2025, Plaintiff, through counsel, filed the Complaint commencing this action. (Dkt. No. 1). The parties thereafter consented to Magistrate Judge jurisdiction for all

purposes. (Dkt. No. 6). On July 17, 2025, the Commissioner filed the Record. (Dkt. No. 9). On September 23, 2025, Plaintiff filed his Brief, and on December 10, 2025, the Commissioner filed his Brief. (Dkt. Nos. 11; 16). On December 16, 2025, Plaintiff filed his reply. (Dkt. No. 17).

## III. DISCUSSION

### A. Applicable Legal Standards

#### 1. Standard of Review

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled[.]" Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).[10] A court may only set aside the Commissioner's decision denying DIB benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).

Judicial review, therefore, involves two levels of inquiry. First, the Court must decide whether ALJ Cascio applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008). Second, the Court must decide whether the ALJ Decision is supported by substantial evidence. See Tejada, 167 F.3d at 773; Calvello, 2008 WL 4452359, at *8. "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009). Substantial evidence is "more than a

[10] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).

The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts. See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999). In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant. See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from his medical sources. 20 C.F.R. §§ 404.1512(b), 416.912(b). Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Casino-Ortiz v. Astrue, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007). When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a

consultative examination, or seeking information from others. See 20 C.F.R. §§ 404.1520b, 416.920b.

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004). If "there are gaps in the administrative record or the ALJ has applied an improper legal standard," the Court will remand the case for further development of the evidence or for more specific findings. Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. See Pratts, 94 F.3d at 39. If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate. See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 119–24 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. § 404.1560(c)(2), as recognized in Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012) (summary order)).

### 2. Standards for benefit eligibility

For purposes of DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also requires that the impairment be

"of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(B). In reviewing a claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by [the] claimant and other witnesses; and (4) the claimant's background, age, and experience." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722–23 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof. See Bush, 94 F.3d at 45. At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the

national economy that the claimant can perform. See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3. Assessing a claimant's subjective allegations

In considering a claimant's symptoms that allegedly limit his or her ability to work, the ALJ must first determine whether there is an underlying medically determinable physical or mental impairment — i.e., an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques — that could reasonably be expected to produce the claimant's pain or other symptoms. See 20 C.F.R. § 404.1529(c). If such an impairment is found, the ALJ must next evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional capacity. See 20 C.F.R. § 404.1529(c)(1). To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility. See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 9318 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)." Id. "Second, if it does not, the ALJ must gauge a claimant's credibility

regarding the alleged symptoms by reference to the seven factors listed" in 20 C.F.R. § 404.1529(c)(3). Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)). If the ALJ does not follow these steps, remand is appropriate. See Sanchez, 2010 WL 101501, at *15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects. See SSR 96-7p, 1996 WL 374186, at *3 (superseded by SSR 16-3p for benefits applications filed after March 27, 2017). These seven factors include: (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See Bush, 94 F.3d at 46 n.4.

#### 4. Medical Opinion Evidence

For benefits applications filed before March 27, 2017, like Plaintiff's (R. 237–41), the SSA's regulations require an ALJ to give more weight to those physicians with the most significant relationship with the claimant. See 20 C.F.R. § 404.1527; see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004) (summary order). Under this "[T]reating [P]hysician [R]ule," an ALJ is required to "give good reasons[,]" Kevin E. v. Comm'r of Soc. Sec., No. 19 Civ. 593 (EAW), 528 F.

Supp. 3d 104, 108–09 (W.D.N.Y. 2021) (quoting former 20 C.F.R. § 404.1527(c)(2)), if he or she determines that a treating physician's opinion is not entitled to "controlling weight[,]" or, at least, "greater weight" than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588–89 (S.D.N.Y. 2000); see 20 C.F.R. § 404.1527(c)(2) (discussing Treating Physician Rule for claims filed before Mar. 27, 2017). In addition, under the Treating Physician Rule, a consultative physician's opinion is generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009) (summary order) (quoting Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990)).[11]

**B. Evaluation of the ALJ's Decision**

In his "Statement of the Case," Plaintiff argues that ALJ Cascio "disregarded his own hypothetical to the [VE] and the [VE]'s testimony that there were no jobs that [Plaintiff] can perform based on this hypothetical[.]" (Dkt. No. 11 at 2). We interpret Plaintiff to be challenging ALJ Cascio's finding that there were sufficient jobs in the economy that a person with Plaintiff's RFC could perform. (See § II.A.2, infra). Elsewhere in Plaintiff's Brief, Plaintiff also appears to be challenging ALJ Cascio's RFC determination, the weight that ALJ Cascio afforded the opinion of Plaintiff's treating physician, and the development of the record regarding his anxiety disorder.

[11] On January 18, 2017, the SSA published revisions to the regulations regarding the evaluation of medical evidence, revisions that were effective on March 27, 2017. See Revisions to Rules Regarding the Evaluation of Med. Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The regulations now provide that for applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). See Young v. Kijakazi, No. 20 Civ. 3604 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Instead, for applications filed on or after March 27, 2017, an ALJ must consider all medical opinions in the record and "evaluate the[ir] persuasiveness" based on five "factors": (1) supportability; (2) consistency; (3) relationship of the source with the claimant; (4) the medical source's specialization; and (5) any "other" factor that "tend[s] to support or contradict a medical opinion[.]" 20 C.F.R. § 404.1520c(c)(1)–(5). Because Plaintiff filed his April 2010 Application before March 27, 2017, the Treating Physician Rule applies.

(Dkt. No. 11 at 4–8). Consistent with the five-step analysis set forth above (see § III.A.2, supra), we first analyze the latter three issues, before turning to Plaintiff's arguments regarding the number of jobs in the economy.

**1. ALJ Cascio's Determination of Plaintiff's RFC**

A claimant's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" Melville, 198 F.3d at 52 (quoting SSR 96-8p, 1996 WL 374184, at *2). When determining a claimant's RFC, "an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole." Maya I.D.F. v. Comm'r of Soc. Sec., No. 21 Civ. 3617 (GRJ), 2022 WL 4298729, at *3 (S.D.N.Y. Sept. 19, 2022); see 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as . . . [a claimant's] residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). "The ALJ does not need to address every piece of evidence but must provide a glimpse into their reasoning." Donald P. v. Comm'r of Soc. Sec., No. 22 Civ. 1022 (GLS) (DJS), 2023 WL 9284292, at *2 (N.D.N.Y. Dec. 20, 2023), adopted by, 2024 WL 166840 (N.D.N.Y. Jan. 16, 2024).

As noted above, ALJ Cascio found that Plaintiff retained the RFC to perform:

> perform light work as defined in 20 CFR [§] 404.1567(b) except occasionally climb ramps and stairs; never climb ropes, ladders or scaffolds; occasionally crouch and stoop; never kneel or crawl; avoid unprotected heights and hazardous machinery; frequently handle, finger, and reach with the bilateral upper extremities; and frequently rotate and flex the neck.

(R. 17). Plaintiff argues that ALJ Cascio erred in making the RFC determination by: (1) failing to take into account that Plaintiff would be off task more than 15% of the time due to his spinal

injuries; (2) failed to consider fully Plaintiff's cervical and lumbar limitations and Plaintiff's testimony regarding his pain; and (3) gave improper weight to a 2014 MRI, a 2010 nerve conduction study, and the cumulative impact of multiple impairments. (Dkt. No. 11 at 5, 7–8).

As an initial matter, Plaintiff's Brief fails to contain any citations to the pages of the Record on which he premises his arguments. (See Dkt. No. 11). Plaintiff bears the burden of proof as to the first four steps of the sequential process, however. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). Given the nearly 900-page Record, which, Plaintiff notes, "spans approximately 17 years[,]" (Dkt. No. 11 at 5), the absence of citations precludes a finding that Plaintiff has met his burden of showing an error in ALJ Cascio's RFC determination. See Jesse L. v. O'Malley, No. 24 Civ. 8219 (RWL), 2025 WL 2169562, at *11 (S.D.N.Y. July 31, 2025) (rejecting argument that plaintiff failed to support with any citations to record evidence); Bushey v. Comm'r of Soc. Sec., No. 16 Civ. 774 (GTS) (WBC), 2017 WL 9509991, at *7, *14 (N.D.N.Y. July 24, 2017) (finding plaintiff failed to satisfy burden of proof in first four steps where she failed to cite evidence from record); Johnson v. Colvin, No. 13 Civ. 6319 (CJS), 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since [p]laintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it. The Court is not required to comb the record in search of evidence in support of [p]laintiff's position.").

We nevertheless consider each of Plaintiff's three challenges to ALJ Cascio's RFC determination.

First, as to Plaintiff's assertion that he would be off task more than 15% of the time due to his spinal injuries (Dkt. No. 11 at 5), the Commissioner correctly points out that Plaintiff

provides no support for this percentage of off task time, nor does the Record contain any medical provider opining that Plaintiff would be off task 15% of the time. (Dkt. No. 16 at 19). Plaintiff's unsupported "speculation is insufficient" to carry his burden of proof. Newton v. Comm'r of Soc. Sec., No. 14 Civ. 904 (TJM) (ATB), 2015 WL 5117768, at *13 (N.D.N.Y. Aug. 31, 2015). Further, in an October 4, 2013 psychiatric evaluation, Mark Weinberger, Ph.D., observed that while Plaintiff was not sleeping well and reported having "mild depressive symptoms[,]" he had a "[c]oherent and goal directed" thought process, fluent and clear speech, intact attention and concentration, and average cognitive functioning. (R. 731–33). Dr. Weinberger concluded that although the examination was "consistent with psychiatric problems," they were not "significant enough to interfere with" Plaintiff's ability to engage in daily functions. (R. 733). In an intelligence examination on the same day, Dr. Weinberger also noted Plaintiff's average intelligence, ability to manage his own money, regular driving, good relationships with family and friends, and ability to perform light cooking and cleaning. (R. 735–37). Plaintiff's self-reporting of these abilities to engage in the activities of daily living therefore supports, rather than undermines, ALJ Cascio's RFC determination. See Medina v. Comm'r of Soc. Sec., 831 F. App'x 35, 36 (2d Cir. 2020) (summary order) (affirming denial of benefits).

Second, the ALJ Decision contradicts Plaintiff's assertion that ALJ Cascio failed to consider fully his cervical and lumbar limitations or "cherry-picked" from the record. (Dkt. No. 11 at 8). While considering Plaintiff's testimony about his pain (R. 18–20), ALJ Cascio observed that the record "failed to demonstrate findings consistent with motor loss . . . , sensory or reflex loss," or other significant spinal limitations. (R. 17). ALJ Cascio then went on to note that, six months after his July 2007 cervical fusion surgery, Plaintiff felt that his condition had "definitely improved

compared with his preoperative condition[,]" and the numbness and pain were only "occasional." (R. 19 (citing R. 506)). ALJ Cascio noted that in April 2010, almost three years after the cervical fusion surgery, Plaintiff complained of pain and weakness in his neck and shoulders, but "there were no signs of motor, sensory, or reflexive deficits in the upper or lower extremities[,]" and Plaintiff's treating physician recommended pain management and an MRI. (R. 19 (citing R. 639)). After considering the medical opinion evidence (see § III.B.2, infra), ALJ Cascio found that it "d[id] not appear from the available evidence that his [] cervical issues would have prevented" light work given that, during his October 2013 orthopedic examination, he exhibited a normal gait, could walk on his heels and toes without difficulty, could squat halfway, and did not use an assistive device. (R. 21–22 (citing R. 739–44)). Furthermore, ALJ Cascio accounted for Plaintiff's cervical and lumbar limitations by including in the RFC the limitation to light work, occasional ramps and stairs, and preclusion of any work involving ropes, ladders, scaffolds, kneeling, and crawling. (R. 17). Accordingly, Plaintiff's complaint that ALJ Cascio did not properly consider his cervical and lumbar limitations or his subjective complaints of pain is unfounded and amounts to little more than a request to reweigh the evidence, which we cannot do. See Rivera v. Comm'r of Soc. Sec., 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019) (explaining that district court should not "reweigh th[e] evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than [one] interpretation"); see also Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013) (summary order) (rejecting claimant's argument that ALJ cherry-picked from the record where "substantial evidence" supported ALJ's finding that claimant, "with the proper treatment, could perform work on a regular and continuing basis").

Third, we reach a similar conclusion concerning Plaintiff's contention that ALJ Cascio failed to give proper weight to a 2010 nerve conduction study, which he contends shows that he cannot perform light work involving frequent handling, fingering, and reaching with his upper extremities and frequent neck rotation; a 2014 MRI, which he contends indicated he needed further surgery; and the cumulative impact of multiple impairments. (Dkt. No. 11 at 7–8). While the Commissioner acknowledges that ALJ Cascio did not specifically reference the 2010 nerve conduction study, he also correctly points out that the Act and the regulations do not require an ALJ to "discuss every piece of evidence submitted." (Dkt. No. 16 at 16 (quoting Gauda v. Comm'r of Soc. Sec., No. 23 Civ. 594, 2024 WL 886595, at *2 (2d Cir. Mar. 1, 2024) (summary order) (finding that ALJ's failure to cite specific evidence did not indicate ALJ's failure to consider that evidence and therefore was not erroneous)). ALJ Cascio did, in fact, discuss a 2008 nerve conduction study, (R. 19), the findings of which were not inconsistent with the 2010 nerve conduction study, including the absence of radiculopathy and recommendation of continued conservative treatment. (Compare R. 541 (recommending use of wrist splints, exercises, and Vitamin B6), with R. 568 (recommending "current management of the symptoms")). As to the 2014 MRI, this test post-dates the Insured Date (R. 772) and therefore fell outside the scope of the evidence an ALJ generally considers. See Papp v. Comm'r of Soc. Sec., No. 05 Civ. 5695 (AJP), 2006 WL 1000397, at *15 (S.D.N.Y. Apr. 18, 2006) (declining to consider reports that described claimant's symptoms after the last insured date). In any event, as ALJ Cascio noted, "there is no evidence indicating that any further surgical intervention was recommended prior to the date last insured." (R. 20). Plaintiff's arguments concerning the 2010 nerve conduction study and the 2014 MRI fail to persuade us that ALJ Cascio erred in the RFC determination. As for Plaintiff's

argument that ALJ Cascio failed to properly evaluate the cumulative impact of multiple impairments, (Dkt. No. 11 at 7–8), not only does Plaintiff fail to cite to the Record, which as established above, precludes a finding that Plaintiff has met his burden of showing an error in ALJ Cascio's RFC determination (see III.B.1, supra), an independent review of the ALJ Decision reveals that ALJ Cascio indeed considered all of Plaintiff's alleged impairments and conditions together yet still found "that such impairments did not significantly [Plaintiff's] physical or mental ability to do basic work activities from June 11, 2009 to the date last insured of September 30, 2014." (R. 15–16).

Accordingly, after considering Plaintiff's arguments concerning ALJ Cascio's RFC determination, we find that substantial evidence supports the RFC determination and "cannot say that no reasonable factfinder could have reached the ALJ's conclusions about [Plaintiff's] RFC[.]" Herrera v. Comm'r of Soc. Sec., No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *11 (S.D.N.Y. Oct. 21, 2021) (citation modified). We therefore affirm ALJ Cascio's determination of Plaintiff's RFC.

**2. Weight Given to Treating Physician**

Plaintiff argues that ALJ Cascio erred in failing to give "controlling weight" to the opinion of Sathish Modugu, M.D., Plaintiff's "long-time treating physician." (Dkt. Nos. 11 at 8; 17 at 5–6). In June 2010, Dr. Modugu opined that Plaintiff was limited to lifting and carrying up to five pounds, could stand or walk less than two hours per day, could sit less than six hours per day, and was limited to pushing and pulling, but had no postural or manipulative limitations. (R. 630–34). ALJ Cascio gave "little weight" to Dr. Modugu's opinion because it was not consistent with his treatment notes. (R. 21).

Our review of the Record reveals adequate support for ALJ Cascio's decision to afford Dr. Modugu's opinion little weight. Starting with the treating records, Dr. Modugu noted in June 2010 that Plaintiff "feels better[,]" was experiencing "very little pain[,]" and was going on vacation. (R. 532). Most of Dr. Modugu's treatment notes also indicate that Plaintiff was not exhibiting numbness, swelling, or weakness in his extremities. (R. 545, 553, 557, 559, 561, 563, 565). Similarly, Plaintiff's other treating physicians noted normal physical findings and no numbness despite Plaintiff's complaints of some pain or tingling. (See, e.g., R. 331, 333, 340, 344, 505, 523, 599–600). Where, as here, other substantial record evidence is not consistent with the treating physician's opinion, ALJ Cascio was not required to afford that opinion controlling weight. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Applying the factors in the applicable regulations, see 20 C.F.R. § 404.1527(d)(2), we deduce that ALJ Cascio properly considered Dr. Modugu's opinion and adequately explained why he did not afford it more weight.

Plaintiff also briefly refers to the opinion of consulting physician Catherine Pelczar-Wissner, M.D., although he does not explain why ALJ Cascio should have afforded her opinions based on her October 2010 examination more weight than he did. (Dkt. No. 11 at 8). As a non-treating physician, Dr. Pelczar-Wissner's opinions "were not entitled to controlling weight." Castorina v. Saul, No. 19 Civ. 991 (AJN) (BCM), 2020 WL 6688961, at *18 (S.D.N.Y. Aug. 24, 2020), vacated and remanded on other grounds by Castorina v. Kijakazi, No. 21 Civ. 100, 2023 WL 4229250, at *2 (2d Cir. June 28, 2023); see Pena Lebron v. Comm'r of Soc. Sec., No. 18 Civ. 125 (BCM), 2019 WL 1429558, at *16 (S.D.N.Y. Mar. 29, 2019) ("A physician who has examined a claimant only once or twice is generally not afforded the weight due a treating physician."). In any event, as with Dr. Modugu, ALJ Cascio explained that he gave only "some weight" to her

opinion that Plaintiff had several marked restrictions for bending, rotational movements, overhead activities, and pushing and pulling because her examination findings included a "normal gait, negative straight leg test, no sensory defects," and only slightly decreased strength in the upper and lower extremities and bilateral grip. (R. 21 (citing R. 718–22)). Thus, for the same reasons as Dr. Modugu, ALJ Cascio did not err in applying the Treating Physician Rule as to Dr. Pelczar-Wissner.

### 3. Development of the Record Regarding Anxiety Disorder

Plaintiff suggests that ALJ Cascio erred in failing to develop the record concerning his anxiety disorder. (Dkt. No. 11 at 4). Plaintiff does not, however, indicate that there are any additional records from the relevant period that ALJ Cascio failed to obtain. (See Dkt. No. 11). Furthermore, when ALJ Cascio asked at the Second Hearing if the record was complete, Plaintiff's attorney responded that it was in fact complete. (R. 36). Finally, even though the regulations typically require a complete medical history for at least the twelve-month period before a benefits application, see 20 C.F.R. § 404.1512(b), the Record here contains Plaintiff's medical history as far back as 2003 and as recent as 2022. (See R. 26–29 (record index)). Where, as here, "there are no obvious gaps . . . and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Accordingly, Plaintiff has not demonstrated that ALJ Cascio failed to develop the record on which he based the ALJ Decision.

### 4. ALJ Cascio's Reliance on the VE's Testimony at Step Five

Plaintiff argues that the VE's testimony did not constitute substantial evidence to support ALJ Cascio's finding at step five that he could perform jobs that existed in significant numbers in

the national economy because ALJ Cascio failed to include in his hypothetical to the VE Plaintiff's cervical and lumbar limitations. (Dkt. No. 11 at 6–7). The Commissioner responds that this argument recycles Plaintiff's challenge to ALJ Cascio's RFC determination and that ALJ Cascio did properly include each of Plaintiff's limitations in the hypothetical to the VE. (Dkt. No. 16 at 21–22).

As noted above, at step five of the disability analysis, "the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy for Plaintiff to perform." Phelps v. Colvin, 20 F. Supp. 3d 392, 406 (W.D.N.Y. 2014) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998), superseded by regulation on other grounds as stated in Nunez v. Cmm'r of Soc. Sec., 164 F.4th 60, 76 (2d Cir. 2025)); see 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may use the Medical Vocational Guidelines, or "grids," see 20 C.F.R. Part 404, Subpart P, Appendix 2, unless the claimant "has nonexertional impairments which significantly limit the range of work permitted by his exertional limitations[.]" Phelps, 20 F. Supp. 3d at 406. In that circumstance, "the Commissioner cannot rely upon the grids, and instead must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain or perform." Id. The ALJ may consult the VE for evidence as to the existence of jobs in the national economy that a hypothetical claimant with Plaintiff's particular functional limitations could perform. See 20 C.F.R. § 404.1566(e). An ALJ may properly rely on the VE's responses to a hypothetical about a claimant's capabilities, provided that the hypothetical is supported by substantial record evidence. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record

evidence to support the assumption[s] upon which the vocational expert based his opinion, and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved[.]"); accord Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir. 1983).

Here, ALJ Cascio's hypothetical to the VE included the same limitations as the RFC, including Plaintiff's limitations related to his neck and back. (Compare R. 17, with R. 50–51). The VE testified that, while Plaintiff could not perform his past relevant work in law enforcement, there were three positions in substantial numbers in the national economy that Plaintiff could perform. (R. 51). Where, as here, the RFC is supported by substantial evidence in the Record, as we have explained above, (see § III.B.1, supra), and ALJ Cascio's hypothetical mirrors that RFC, ALJ Cascio did not err in relying on the VE's testimony about "the availability of jobs suited to a hypothetical person's capabilities[.]" Mancuso v. Astrue, 361 F. App'x 176, 179 (2d Cir. 2010) (summary order). Plaintiff has not shown that there are any other limitations supported by substantial evidence that ALJ Cascio should have but failed to include in the hypothetical to the VE. (See Dkt. No. 11). See also Paula L. v. Comm'r of Soc. Sec., No. 20 Civ. 1224 (DB), 2021 WL 3549438, at *8 (W.D.N.Y. Aug. 11, 2021) (explaining that ALJ is not required "to pose hypothetical questions containing limitations that were not credibly established by the record.").

Therefore, Plaintiff has failed to show that ALJ Cascio erred at step five in relying on the VE's testimony about the number of available jobs Plaintiff could perform with his RFC.

## IV. CONCLUSION

For the reasons set forth above, the ALJ Decision is **AFFIRMED,** and this action is **DISMISSED**. The Clerk of the Court is respectfully directed to enter final judgment in favor of the Commissioner and close this action.

The Clerk of the Court is respectfully directed to close Dkt. No. 11, and to update the docket to replace Martin O'Malley with Frank J. Bisignano as the Commissioner of Social Security. (See n.2, supra).

Dated: New York, New York
August 26, 2026

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge